## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

CHRISTIAN CASTRO,                    )
                                     )
     Petitioner,                    )
                                     )
v.                                   )          Case No. CIV-17-1238-G
                                     )
JANET DOWLING, Warden,               )
                                     )
     Respondent.                    )

## ORDER

Petitioner Christian Castro, a state prisoner appearing pro se, has petitioned this Court for a writ of habeas corpus, challenging through 28 U.S.C. § 2254 the constitutionality of his criminal conviction by the State of Oklahoma. *See* Pet. (Doc. No. 1). Respondent, Warden Janet Dowling, has filed an Answer to the Petition, as well as the state-court record. *See* Answer (Doc. No. 12); Original Record ("OR," Doc. No. 14) (conventionally filed). For the reasons outlined below, the Court finds that the Petition should be denied.

## I.    RELEVANT CASE HISTORY

The Oklahoma Court of Criminal Appeals ("OCCA") made the following factual findings regarding Petitioner's crimes, which the Court presumes are correct, as Petitioner has not presented clear and convincing evidence otherwise. *Lockett v. Trammell*, 711 F.3d 1218, 1222 (10th Cir. 2013) (citing 28 U.S.C. § 2254(e)(1)).

> [Daryl] Davis, [Christian] Castro, [Nelson] Williams and Carl Bennett all worked at Mathis Brothers furniture store. Two days before the murder, January 21, 2012, Castro, Bennett and Davis went to a strip club. During the evening, Castro and Davis left the club to go to Davis' house for more money.

When they returned, Castro, Davis and Bennett went to the VIP Room. This room had a $200 cover charge, plus separate charges for private dancers. Bennett said he couldn't afford it, and Castro and Davis offered to pay what Bennett believed would be a reduced-price cover charge. When the club closed, Bennett could not pay his $200 tab for a dancer; he was arrested for public drunkenness and taken to jail. Castro found Williams and borrowed $100 for bail money for Bennett. Bennett testified that, while they were at the club, Castro and Davis went to Davis' house to get money because Castro was broke. Bennett testified that Davis said he was hoping Castro would pay him back because he needed the money for rent.

Castro kept a Jimenez .9mm pistol in his car, and on the day of the murder, he and Williams went to buy Williams a Hi-Point .9mm pistol. Castro showed Williams how it worked and gave him some ammunition. At approximately 8:00 p.m. the two went to Mathis Brothers. Williams testified Castro stated that it was either Davis or him, and said, "I've got to get him out of the game." Castro also said he owed Davis money, and Davis wanted it paid. They did not see Bennett but saw Davis in the parking lot. Castro drove Davis to his car, and the two talked for a few minutes. Williams heard Davis say "500 or 250," and Castro tell Davis that someone was bringing him the money he owed Davis. Davis and Castro street-raced, then pulled into a residential neighborhood where Castro said he was meeting his friend with the money. Castro borrowed Williams' phone and returned it; they moved the cars around the corner; Williams dropped and broke his phone; the three men looked on the ground for the battery. As Davis knelt by Castro's car, Williams saw Castro, with his hand in his pocket, glare at Davis. When Davis went to turn on his own car's headlights, Castro followed, and shot him fatally in the back of the head. The bullet fragment recovered from Davis' head had a right twist; Castro's Jimenez pistol had a right twist, while Williams' Hi-Point had a left twist.

Castro jumped into his car and threw his gun on the passenger floorboard. As he and Williams left, Williams heard Castro say, "I did it, I did it." [Trial Tr. I 171] When Williams picked up Castro's gun, the barrel was hot. [Trial Tr. I 172, 177] Watching news footage, Castro said, "I did it, man, I did it. I'm an OG." [Trial Tr. I 177] Castro demonstrated to Williams how he shot Davis in the back of the head. At Williams' house, Williams gave Castro back his gun, and Williams put his own Hi-Point in a metal box safe in his attic; Williams admitted to police that both guns might be in the safe, and police found them both there the next day. The morning after the murder Castro told Williams, "We're the new hit men in Oklahoma, we're the new hit men, big dog." [Trial Tr. I 178] When they went to work they were interviewed by police, then taken to the police station. After the second

interview Williams showed detectives the safe with the guns.  [Trial Tr. I 185, II 358, StEx40, 45-46]

Castro vigorously denied shooting Davis.  He testified that, while Davis followed him, Williams told him to pull over in a neighborhood.  The men talked, moved the cars, and talked some more, before Castro got a phone call (on his own phone).  After Castro ended the call, he heard Williams shoot Davis.  He said Williams ran to him, yelling "Let's go", and as they drove away Williams said he shot Davis.  At Williams' house, Castro said, Williams brought both guns in and put them on the bed.  Castro said he left his gun on Williams' bed and went home.  Castro admitted his gun was in his car before the shooting; he said that Williams took his gun when they got out of the car before Davis was shot.  Castro testified that, the night before the shooting, he and Davis had gone to the strip club with Bennett, and that he went home with Davis so Davis himself could get more money.  Castro denied borrowing any money from Davis.

Williams was originally charged as a co-defendant with Castro.  After Williams[] testified for the State at preliminary hearing, his charge was amended to accessory after the fact.  At Castro's trial Williams admitted that his charge had been reduced, allowing him to bond out of jail, but testified that he had no deal with prosecutors for his testimony.  He said he hoped for a good outcome in his case, and hoped he'd get probation as a result of his testimony.  [Trial Tr. I 139-40, II 278]  After the trial Williams pled guilty and received an 8-year suspended sentence.

OCCA Op. (Doc. No. 12-6) at 1-4 (first three alterations and ninth alteration added).[1]

Following a jury trial in the District Court of Oklahoma County, Oklahoma, Petitioner was convicted of murder in the first degree.  *See* Pet. at 1-2; OCCA Op. at 1; OR 317 (Verdict, *State v. Castro*, No. CF-2012-646 (Okla. Cnty. Dist. Ct. Mar. 31, 2014)).  On May 2, 2014, Petitioner was sentenced to life imprisonment without the possibility of parole.  *See* Pet. at 1; OCCA Op. at 1; OR 334-39 (J. & Sentence, *State v. Castro*, No. CF-2012-646 (Okla. Cnty. Dist. Ct. May 2, 2014)).

---

[1] References to documents electronically filed in this Court use the CM/ECF pagination.

Petitioner appealed his conviction and sentence to the OCCA. *See Castro v. State*, No. F-2014-411 (Okla. Crim. App.). The OCCA affirmed Petitioner's conviction and sentence on November 6, 2015. *See* OCCA Op. at 1, 14. On December 5, 2016, Petitioner filed an Application for Postconviction Relief, which the trial court denied on August 8, 2017. *See* Pet'r's Postconviction Appl. (Doc. No. 12-7); Trial Ct. Postconviction Order (Doc. No. 12-9). Petitioner appealed this disposition to the OCCA, and on November 3, 2017, the OCCA affirmed. *See* OCCA Postconviction Order (Doc. No. 12-11).

Petitioner then filed the instant habeas action, raising five grounds for relief. *See* Pet. at 8-29. Respondent concedes, and the record likewise reflects, that the Petition was timely filed. *See* Pet. at 1, 4; Answer at 2; 28 U.S.C. § 2244(d).

## II.    DISCUSSION

### A. *Ground One: Trial Court Error*

#### 1. *Failure to Instruct That Nelson Williams Was an Accomplice as a Matter of Law*

In Ground One, Petitioner first argues that the trial court violated his due process rights by failing to instruct the jury that Nelson Williams was an accomplice as a matter of law and that Mr. Williams' testimony therefore required corroboration. *See* Pet. at 8-11. Petitioner contends that Mr. Williams was an accomplice as a matter of law because Mr. Williams was initially also charged with first-degree murder as a co-defendant, and Oklahoma law generally prescribes that "[a] witness is an accomplice to the crime at trial if the witness could be charged with the same offense." *Postelle v. State*, 267 P.3d 114, 126 (Okla. Crim. App. 2011); *see* Pet. at 9.

Petitioner raised this argument on direct appeal, and the OCCA denied relief.  In rejecting Petitioner's challenge, the OCCA noted that trial courts are obligated to instruct jurors that a witness is an accomplice as a matter of law only if the evidence establishing that the witness is an accomplice is uncontroverted.  *See* OCCA Op. at 10-11 (citing *Postelle*). The OCCA found that the evidence on the accomplice question was conflicting, pointing specifically to Petitioner and Mr. Williams' differing testimony regarding who shot Daryl Davis and to the forensic evidence establishing that the bullet used to kill Mr. Davis was consistent with Petitioner's gun.  *See id.* at 11-12 (finding no plain error in the trial court's instruction determination).

Where, as here, a federal habeas claim has been adjudicated on the merits by the state courts, a deferential standard of review applies:

> Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we must apply a highly deferential standard in § 2254 proceedings, one that demands that state-court decisions be given the benefit of the doubt.  If a claim has been "adjudicated on the merits in State court proceedings," we may not grant relief under § 2254 unless the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  The phrase "clearly established Federal law, as determined by the Supreme Court of the United States," *id.* § 2254(d)(1), refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision.

> Under the "contrary to" clause of § 2254(d)(1), we may grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. And under the "unreasonable application" clause, we may grant relief only if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the

> prisoner's case.  An unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

*Dodd v. Trammell*, 753 F.3d 971, 982 (10th Cir. 2013) (alterations, citations, and internal quotation marks omitted); *see also Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent the state court finds the claim lacks merit under federal law.").  Pursuant to AEDPA, factual findings made by a state trial or appellate court are presumptively correct, and the presumption may be rebutted only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The requirement of corroboration of accomplice testimony is found in Oklahoma law, rather than the U.S. Constitution.  *See Cummings v. Sirmons*, 506 F.3d 1211, 1241 (10th Cir. 2007) ("[T]here is no constitutional requirement that the testimony of an accomplice be corroborated by independent evidence.").  A jury instruction that is erroneous under state law does not, by itself, support habeas relief.  "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."  *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks omitted).  "'An omission . . . is less likely to be prejudicial than a misstatement of the law.'"  *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Here, there is no dispute that the jury was thoroughly instructed regarding accomplice liability and the possibly applicable corroboration requirements. *See* OR 299-304 (Jury Instruction Nos. 20, 21, 22, 23, 24, 25). Rather, the error alleged is that the trial court should have determined as a matter of law, and instructed the jury to accept, that Mr. Williams was an accomplice of Petitioner. While Petitioner relies on the proposition that a witness "is an accomplice to the crime at trial if the witness could be charged with the same offense," this proposition is separate from the relevant inquiry of whether the trial court is required to rule and instruct that a witness is an accomplice as a matter of law, which requires uncontroverted evidence showing that the witness could be so charged. *Postelle*, 267 P.3d at 126; *see id.* at 128-29 ("If the evidence is uncontroverted and it establishes that the witness is an accomplice, the trial judge must so rule as a matter of law and instruct the jury that his testimony requires corroboration. . . . . However, if evidence is susceptible to alternative findings that the witness is or is not an accomplice, then the issue is a question of fact to be submitted to the jury under proper instruction." (internal quotation marks omitted)).

The record supports the OCCA's determination that the evidence as to Mr. Williams' accomplice status was not uncontroverted. *Compare, e.g.*, Trial Tr. 170-71 (Mr. Williams testifying that Petitioner shot Mr. Davis and returned to the car), *with id.* at 676-78 (Petitioner testifying that Mr. Williams shot Mr. Davis and returned to the car). Accordingly, Petitioner has not shown any error of state law, much less that the absence of the desired jury instruction deprived him of due process and a fair trial. Because Petitioner has not shown that his criminal trial was rendered fundamentally unfair by the omission of

the desired instruction, the Court concludes that the OCCA's rejection of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law and that the decision was based on a reasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1), (2).

### 2. *Failure to Grant Continuance and to Appoint New Counsel*

Petitioner also argues that he was deprived of due process by the trial court's alleged denial of his requests for a continuance of the trial and appointment of new counsel. *See* Pet. at 11-12. Respondent contends that because Petitioner did not present this claim to the state's highest court, Petitioner has not "exhausted the remedies available in the courts of the State" as normally required for habeas relief to be granted. 28 U.S.C. § 2254(b)(1)(A); *see* Answer at 2, 12, 17-23.

"Exhaustion requires that the claim be 'fairly presented' to the state court, which means that the petitioner has raised the substance of the federal claim in state court." *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (internal quotation marks omitted). To fairly present a claim to the state court, the petitioner must do "more than present[] all the facts necessary to support the federal claim." *Id.* (emphasis and internal quotation marks omitted). The presentation of "somewhat similar" claims is insufficient. *Id.* at 891.

Petitioner did not argue on direct appeal that he was denied his rights under the Fourteenth Amendment by the trial court's rulings on his requests for a continuance and new counsel. Petitioner did reference these alleged trial-court errors in his application for postconviction relief, but he did so only within the context of his Sixth Amendment claim of ineffective appellate counsel. *See* Pet'r's Postconviction Appl. at 17-19. The OCCA

8

did not sua sponte address such a due process argument in either of its written decisions. *See* OCCA Op.; OCCA Postconviction Order; *see also Alverson v. Workman*, 595 F.3d 1143, 1153 n.3 (10th Cir. 2010). Thus, Petitioner failed to exhaust his state-court remedies as to this claim prior to seeking habeas relief.

An unexhausted claim need not be dismissed by a federal habeas court, but instead may be denied as procedurally defaulted, if the claim is subject to an "anticipatory procedural bar." The Tenth Circuit has explained:

> [D]ismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds. Where the relevant state courts "would now find those claims procedurally barred, there is a procedural default for the purposes of federal habeas review." *Bland*[ *v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006)]; *see also Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citing *Hain v. Gibson*, 287 F.3d 1224, 1240 (10th Cir. 2002)). A petitioner may overcome the procedural bar only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*[ *v. Thompson*, 501 U.S. 722, 750 (1991)].

*Grant*, 886 F.3d at 892 (citation and internal quotation marks omitted). *See also Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (explaining that the Supreme Court in *Coleman* held that when state-court consideration of an unexhausted claim is anticipated to be procedurally barred, and no basis has been presented to the federal habeas court to overcome that bar, the claim is "considered exhausted and procedurally defaulted for purposes of federal habeas relief").

The Court agrees with Respondent that Petitioner's unexhausted due process claim is subject to such an anticipatory procedural bar.  If Petitioner were to seek postconviction relief a second time in the state courts, his claim plainly would be procedurally barred under Oklahoma law due to his failure to raise the claim on direct appeal and/or his failure to raise the claim in the initial postconviction proceedings.  *See* Okla. Stat. tit. 22, § 1086; *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) ("Oklahoma requires a post-conviction relief applicant to raise all grounds for relief which he actually knows or should have known through the exercise of due diligence in his original application for relief."); *Ledford v. Jones*, No. CIV-06-460-R, 2007 WL 427703, at *8 (W.D. Okla. Feb. 6, 2007) ("In Oklahoma, post-conviction claims are waived if they had not been raised on direct appeal or in an earlier post-conviction application.").  The Tenth Circuit has previously recognized that "[t]he OCCA's ban on successive post-conviction applications" is both "independent" and "adequate," such that the rule may be applied "to bar federal habeas." *Williams*, 782 F.3d at 1212; *Coleman*, 501 U.S. at 730; *see also Grant*, 886 F.3d at 901 n.8.  The Tenth Circuit likewise has recognized that Oklahoma's bar on raising claims for postconviction relief that could have been raised on direct appeal is an independent and adequate state procedural ground.  *See Grant*, 886 F.3d at 901 n.9.

As a result, federal habeas review of this claim is precluded absent a showing by Petitioner of either: (1) cause for the default and actual prejudice from the violation of federal law, or (2) that a fundamental miscarriage of justice will result if Petitioner's claim is not considered.  *See Williams*, 782 F.3d at 1212 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)); *Coleman*, 501 U.S. at 750.  "[C]ause" "must be something *external* to the

petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. Although Petitioner argues that his appellate counsel was ineffective, as discussed below, this claim has no merit. Such ineffective assistance cannot, therefore, "constitute 'cause' for his procedural default in state court." *Sherrill v. Hargett*, 184 F.3d 1172, 1176 (10th Cir. 1999).[2] He therefore cannot show cause to excuse his procedural default. Absent a showing of cause, there is no need for the Court to consider the existence of actual prejudice. *See Steele v. Young*, 11 F.3d 1518, 1522 n.7 (10th Cir. 1993).

The fundamental miscarriage of justice exception is "extremely narrow," "implicated only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir. 1993) (internal quotation marks omitted). To prevail, Petitioner must identify evidence that "affirmatively demonstrate[s] his innocence." *Id.*; *see Steele*, 11 F.3d at 1522 (noting that a petitioner must supplement his or her constitutional claim with "a colorable showing of factual innocence" (internal quotation marks omitted)). Petitioner did not supplement his habeas claim with a colorable showing of factual innocence, and the record does not otherwise support such an actual-innocence claim.

---

[2] Petitioner appeared pro se in the state-court postconviction proceedings. Further, ineffectiveness of postconviction counsel may not be invoked as cause for any procedural default in the trial court, because there is no Sixth Amendment right to effective counsel in such proceedings. *See Coleman*, 501 U.S. at 755-57; *Barclay v. Bryant*, No. CIV-15-1369-M, 2017 WL 5358726, at *8 n.6 (W.D. Okla. Oct. 23, 2017) (R. & R.), *adopted*, 2017 WL 5346386 (W.D. Okla. Nov. 13, 2017).

In sum, an anticipatory procedural bar precludes this Court's consideration of Petitioner's federal due process claim, and Petitioner has not overcome that bar by demonstrating "cause and prejudice" regarding his failure to raise the claim in state court or that a fundamental miscarriage of justice will result if this Court does not address his claim. Therefore, Petitioner's federal due process claim is denied as procedurally defaulted.

### B. Ground Two: Ineffective Assistance of Trial Counsel

In Ground Two, Petitioner argues that his trial counsel provided ineffective assistance by failing to (1) ask Petitioner and Mr. Williams about an unfired bullet located at the scene of Mr. Davis' murder, (2) perform an adequate pretrial investigation, (3) timely request certain materials from Petitioner during the pretrial stage of the case, (4) adequately investigate the details of the charged offense, (5) communicate with Petitioner on the issue of premeditation, (6) provide Petitioner with materials Petitioner had requested, (7) seek a continuance of the trial at Petitioner's request, and (8) follow state statutes and rules governing the representation of Petitioner and preparation of Petitioner's defense. *See* Pet. at 12-18.

Although most of Petitioner's application for postconviction relief was framed as a claim for ineffective assistance of appellate counsel, Petitioner did discretely argue that his trial counsel's representation was "deficient and ineffective." *See* Pet'r's Postconviction Appl. at 15-17, 19. Both the trial court, in denying Petitioner's application for postconviction relief, and the OCCA, in affirming that decision, determined that this ineffective assistance of trial counsel ("IATC") claim had been waived due to its omission

from Petitioner's direct appeal. *See* Trial Ct. Postconviction Order at 5 ("A claim which could have been raised on direct appeal and was not is waived."), 14-15 (finding that Petitioner's IATC claims were waived as well as meritless); OCCA Postconviction Order at 2 ("With the exception of his claims of ineffective assistance of appellate counsel, the issues Petitioner asserts in this post-conviction proceeding, including his claims of ineffective trial counsel, either were or could have been raised in his direct appeal. Those issues are therefore waived or procedurally barred."); *see also Sporn v. State*, 139 P.3d 953, 953-54 (Okla. Crim. App. 2006) ("[A] claim of ineffective assistance of trial counsel, available at the time of a defendant's direct appeal, must be presented in that direct appeal or it is waived.").

"The doctrine of procedural default prevents a federal court from reviewing the merits of a claim—including constitutional claims—that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Williams*, 782 F.3d at 1212 (internal quotation marks omitted). Thus, federal habeas review of Petitioner's IATC claim is unavailable due to its procedural default in state court. *See id.*; *see also Harmon v. Sharp*, 936 F.3d 1044, 1060-61 (10th Cir. 2019) ("[A] federal habeas court should not reach the merits of a federal claim where the state court addressed the merits when the state court clearly alternatively held that the petitioner had procedurally defaulted." (internal quotation marks omitted)).

As noted, the Court may not consider issues raised in a habeas petition "that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'"

*Harmon*, 936 F.3d at 1060 (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998)).  The OCCA expressly found that Petitioner had waived the IATC claim, the result of which is generally to bar such a claim from being raised in subsequent state-court review. *See* OCCA Postconviction Order at 2; *Sporn*, 139 P.3d at 953-54; *see also Hale v. Gibson*, 227 F.3d 1298, 1328 (10th Cir. 2000).  When the underlying claim is ineffective assistance of trial counsel, however, the Tenth Circuit has recognized that countervailing concerns justify an exception to the general rule of procedural default.  The Oklahoma state courts' procedural bar applies to IATC claims not raised on direct appeal only if certain conditions are met:

> [T]he Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone.

*English*, 146 F.3d at 1263.

Both conditions are met in this case.  The record reflects that Petitioner was represented by different counsel at trial and on appeal.  *See* Pet. at 5.[3]  In *Spears v. Mullin*, the Tenth Circuit clarified that the second *English* condition requires that "either the defendant's [IATC] claim could be resolved solely on the trial record before the direct-appeal court or the defendant could have expanded the direct-appeal record to present his

_____

[3] Although Petitioner alleges there was a conflict of interest between his trial and appellate attorneys, due to their both being employed with the Oklahoma County Public Defender's Office, he does not argue that they were the same counsel for purposes of the *English* exception.  *See* Pet. at 25-26.  Nor does the record in this matter support such a finding.  *See Harmon*, 936 F.3d at 1061-62 (discussing relevant factors and determining that the petitioner's trial and appellate attorneys from the Oklahoma County Public Defender's Office were "separate" for purposes of *English*).

[IATC] claim adequately." *Spears*, 343 F.3d 1215, 1252 (10th Cir. 2003). Petitioner "fail[s] to assert that Oklahoma's remand procedure, as provided by Rule 3.11 of the Rules of the Oklahoma Court of Criminal Appeals, would not have permitted him to supplement the record adequately for his ineffectiveness claim on direct appeal." *Coronado v. Ward*, 517 F.3d 1212, 1215 (10th Cir. 2008); *see* Pet. at 12-18; OCCA R. 3.11(B)(3)(b) (prescribing procedure and requirements for supplementation of the appellate record on an IATC claim). Therefore, Petitioner's IATC claim is properly subject to a procedural bar.

Moreover, Petitioner has not shown "cause and prejudice" to excuse his default in state court. *See Williams*, 782 F.3d at 1212; *Steele*, 11 F.3d at 1522. Petitioner argues as Ground Four in his Petition that his appellate counsel failed to raise an IATC claim on direct appeal because appellate counsel worked on the same floor and in the same building as Petitioner's trial counsel, creating a conflict of interest. But the OCCA rejected this claim on the merits, and as discussed below, the Court concludes that this determination was reasonable. *See* 28 U.S.C. § 2254(d). Nor has Petitioner demonstrated that a fundamental miscarriage of justice would result if his claim was not considered, as Petitioner does not make a colorable showing of actual innocence.

Accordingly, Petitioner's IATC claim is denied as procedurally defaulted.

### C. Ground Three: Prosecutorial Misconduct

#### 1. Presentation of False Testimony

In Ground Three, Petitioner first claims that the State's prosecutor knowingly permitted Mr. Williams to give false testimony at trial. *See* Pet. at 19-21. Specifically, Petitioner argues that Mr. Williams falsely testified at trial that after the shooting, Mr.

Williams "put his gun in a me[]tal box in his attic, but did not hide Petitioner's gun." *Id.* at 19 (citing Trial Tr. 179-81). Petitioner argues that the State knew or should have known that this testimony was false—i.e., that Mr. Williams actually did hide Petitioner's gun along with his own—based upon the findings of the prior police investigation and from Mr. Williams' testimony at Petitioner's preliminary hearing. *See id.* Petitioner also points to Mr. Williams' guilty plea, signed by Mr. Williams several months after Petitioner's trial and conviction, as indicative of Mr. Williams' perjury at trial. *See* Pet'r's Mot. New Trial Ex. A (Doc. No. 12-3) at 11 (Mr. Williams stating the factual basis for his guilty plea on a charge of accessory after the fact was that he "plac[ed] [Petitioner's] weapon into an attic space").[4]

Petitioner raised this claim of prosecutorial misconduct on direct appeal. *See* OCCA Op. at 4-9. In denying the claim on the merits, the OCCA first determined that the record did not support Petitioner's characterization of Mr. Williams' testimony at trial as "completely different" from his later sworn plea statement, noting that Mr. Williams "equivocated on this issue at trial." *Id.* at 7. The appellate court stated that it was the duty of the jury to resolve any inconsistencies in the testimony. *See id.* The OCCA further determined that, even assuming Mr. Williams' trial testimony was false, Petitioner had not shown that the prosecution "knew that at the time of trial" or that the State "intentionally concealed any inconsistencies and discrepancies in Williams' testimony." *Id.* at 8-9.

---

[4] The OCCA supplemented the appellate record to allow consideration of this plea statement. *See* OCCA Op. at 5, 9-10.

"A prosecutor who knowingly presents false evidence violates due process . . . ." *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (citing *Napue v. Illinois*, 360 U.S. 264 (1959)).  To establish a due process violation, Petitioner must demonstrate that "(1) [the witness's] testimony was in fact false, (2) the prosecution knew it to be false, and (3) the testimony was material."  *Id.*

The OCCA accurately described Mr. Williams' trial testimony on this issue as "equivoca[l]," "inconsistent," and "contradictory," rather than an outright denial as to hiding Petitioner's gun.  *See* Trial Tr. 179-80, 266 (Mr. Williams testifying both that he did not know what happened with Petitioner's gun and that he knew places where Petitioner could have put the gun), 272 (Mr. Williams answering, "I don't know," when asked if he had put Petitioner's gun with his own gun in the attic).

Further, "[e]ven assuming" the falsity of Mr. Williams' trial testimony, Petitioner "has failed to assert any evidence indicating prosecutors knew [Mr. Williams'] testimony was false."  *Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001); *see also Farrar v. Raemisch*, 924 F.3d 1126, 1131-32 (10th Cir. 2019) (explaining that federal habeas relief cannot be based on false testimony unless the government "knowingly us[ed] [the] perjured or false testimony at trial"); *cf. Parker v. Martin*, 589 F. App'x 866, 869 (10th Cir. 2014) (noting that "[b]are conclusions" are insufficient to tend to show that the prosecution knew a witness was lying).  Petitioner argues that the prosecution "knew or should have known" at the time of the preliminary hearing that Petitioner's gun was found wrapped in the same towel as Mr. Williams' gun, because the guns were found in this manner during the police investigation.  Pet. at 19.  But the later position of the weapons does not, by itself, prove

who placed them there.  Further, a statement Mr. Williams made in his plea form five months after the trial does not reasonably speak to the prosecution's knowledge at the time of the trial.

Accordingly, the Court concludes that the OCCA's rejection of this claim was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1), (2).

### 2.   *Vouching for State Witness and Stating Personal Opinion*

For his second claim of prosecutorial error, Petitioner argues that the prosecutor vouched for the State's witnesses and gave his personal opinion regarding Petitioner's guilt during closing argument.  *See* Pet. at 21-23 (citing Trial Tr. 760-68, 807-10); *see also Thornburg v. Mullin*, 422 F.3d 1113, 1132 (10th Cir. 2005) (explaining that a prosecutor's argument is "impermissible vouching" "if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility").  Although Petitioner referenced these statements on direct appeal in connection with his false-testimony claim, he did not raise this separate vouching claim to the state courts, and the OCCA did not sua sponte address such a claim.  *See* Pet'r's Appellate Br. (Doc. No. 12-1) at 15-19; Answer at 2, 37-38.  The claim, therefore, was not "fairly presented" to the state court and is unexhausted.  *Grant*, 886 F.3d at 890-91.

Because this claim was available to Petitioner at the time of his direct appeal, it would be deemed waived and procedurally barred under Oklahoma law for purposes of state-court review if raised through a new application for postconviction relief.  *See id.* at 891, 901 n.9.  Thus, to prevent this Court from denying the claim as subject to an

anticipatory procedural bar, Petitioner must demonstrate either "cause and prejudice" for his failure to raise the claim in state court or that the failure to review his claim would result in a "fundamental miscarriage of justice." *Davis v. Sharp*, 943 F.3d 1290, 1297 (10th Cir. 2019) (internal quotation marks omitted). Here, again, Petitioner did not attempt to make either showing.

As to cause, the Court does not discern from the record any justification for Petitioner's failure to raise this claim in state court. The fact that Petitioner referenced the conduct on direct appeal in support of a different claim indicates that there were no "external" impediments preventing Petitioner from bringing a due process claim based upon that conduct. *Coleman*, 501 U.S. at 753. In addition, Petitioner failed to "supplement his habeas claim with a colorable showing of factual innocence." *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997) ("[F]actual innocence means that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." (internal quotation marks omitted)). Accordingly, Petitioner has not shown that failure to consider the claim would result in a fundamental miscarriage of justice.

Accordingly, this claim is denied as procedurally defaulted.

### D. Ground Four: Ineffective Assistance of Appellate Counsel

In Ground Four, Petitioner asserts several claims of ineffective assistance by his appellate counsel ("IAAC"). *See* Pet. at 23-26.

Claims of ineffective assistance of counsel in violation of the Sixth Amendment are analyzed under the two-prong test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner "must show that counsel's performance

was deficient." *Id.* at 687.  To satisfy this prong, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness" or, in other words, that counsel's performance was "not within the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted).  There is a strong presumption that counsel acted reasonably, and counsel's performance will not be deemed deficient if "the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

With respect to the second prong of the analysis, Petitioner must show that "but for counsel's unprofessional errors," "there is a reasonable probability" that "the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

### 1. Inadequate Time to Compose Appellate Brief

Pointing to his appellate counsel's two requests for extension of her briefing deadline, Petitioner contends that, due to an excessive caseload, his appellate counsel did not have time to compose an adequate appellate brief.  *See* Pet. at 23-25.

Petitioner first raised this claim in the state postconviction proceedings.  *See* Pet'r's Postconviction Appl. at 2-4.  Applying *Strickland*, the trial court considered and rejected this ineffective assistance of appellate counsel claim on the merits.  *See* Trial Ct. Postconviction Order at 2-15.  On appeal, the OCCA likewise denied relief under *Strickland*:

> None of Petitioner's allegations of deficient performance actually demonstrate objectively unreasonable conduct on the part of his appellate counsel. Moreover, Petitioner has not met his burden of establishing that, after analyzing all of the evidence and the record in this case, any of the alleged errors on the part of appellate counsel would have changed the result of his appeal.

OCCA Postconviction Order at 2 (citation omitted).

Because the OCCA applied *Strickland* to reject this IAAC claim, the Court reviews the OCCA's decision under § 2254(d)(1) "to determine whether or not it applied *Strickland* in an objectively reasonable manner." *Spears*, 343 F.3d at 1248. When the "highly deferential" standard of *Strickland* is applied in tandem with the "highly deferential" standard of § 2254(d), the resulting review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As an initial matter, Petitioner's underlying premise regarding his appellate counsel's caseload is unsupported. Petitioner argues that, "[w]hile attempting to perfect a state direct appeal for Petitioner," his appellate counsel "was working on 44 other direct appeals." Pet. at 24 (emphasis omitted). As the basis for this proposition, Petitioner cites two orders issued by the OCCA during the pendency of his direct appeal. *See* OCCA Order of Oct. 28, 2014 (Pet'r's Postconviction Appl. at 21-23); OCCA Order of Nov. 26, 2014 (Pet'r's Postconviction Appl at 24-25). Each of these orders identifies multiple criminal

appeals and directs the state-court clerk to grant the requests for extensions that had been filed in those appeals. There is no suggestion from the orders that Petitioner's appellate counsel was personally involved in any of the other listed matters, much less *all* of them. Further, the OCCA Rules expressly permit requests to be made for extensions of briefing time. *See* OCCA R. 3.4(D). Petitioner does not point to any aspect of the case docket or the OCCA's written decision reasonably indicating that the OCCA considered the two briefing continuances granted in Petitioner's case in ultimately disposing of the appeal.

Because Petitioner has shown neither deficient performance nor a reasonable probability of a different result on direct appeal based upon his counsel's workload, Petitioner fails to show that the OCCA unreasonably applied *Strickland* in denying relief on this claim. *See* 28 U.S.C. § 2254(d)(1).

## 2. *Conflict of Interest*

Petitioner also asserts that his appellate counsel was constitutionally ineffective because of a conflict of interest arising from the fact that appellate counsel "worked on the same floor, in the same building" as Petitioner's trial counsel. Pet. at 25. According to Petitioner, counsel's conflict is apparent from the fact that his appellate attorney failed to present an IATC claim on direct appeal. *See id.* at 25-26. The trial court and the OCCA each rejected this claim on the merits. *See* Trial Ct. Postconviction Order at 2-15; OCCA Postconviction Order at 2.

"Effective assistance of counsel includes the right to representation that is free from conflicts of interest." *Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999). Petitioner, however, must do more than present "a mere theoretical division of loyalties." *United*

22

*States v. Carrasco*, 54 F. App'x 299, 300 (10th Cir. 2002) (internal quotation marks omitted).  He must "establish that an actual conflict of interest adversely affected his counsel's performance."  *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) ("[T]he possibility of conflict is insufficient to impugn a criminal conviction.")).

The Tenth Circuit has explained that "[n]o inherent conflict exists merely because appellate and trial counsel are both employed by the Public Defender's Office."  *Watson v. Poppell*, 154 F. App'x 712, 715 (10th Cir. 2005); *cf. Harmon*, 936 F.3d at 1061-62 (finding that the trial and appellate attorneys from the Oklahoma County Public Defender's Office were "separate" for purposes of *English*).  Petitioner's conclusory allegations, based solely upon the proximity of the attorney's offices, do not reasonably support the presence of an actual conflict of interest or overcome the "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  And appellate counsel's decision not to raise an IATC claim does not, standing alone, establish such a conflict.  Petitioner's counsel was not required to "raise every nonfrivolous claim" in the merits brief.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  "Winnowing out weaker arguments is not a constitutionally deficient practice and, indeed, is the hallmark of effective advocacy."  *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991) (internal quotation marks omitted); *see also Smallwood v. Gibson*, 191 F.3d 1257, 1270 (10th Cir.

1999) (rejecting IAAC claim where "[t]he record contains no evidence . . . that petitioner's [appellate] counsel was unable to objectively review his trial counsel's performance").

Accordingly, Petitioner is unable to show deficient performance in this regard and fails to establish that the state court unreasonably applied *Strickland*.[5]

### 3.   *Omission of Issues from the Appellate Brief*

Petitioner next argues that the direct-appeal brief was deficient because it did not include the claims Petitioner now raises in Grounds One through Three of his habeas petition.  *See* Pet. at 23-25.

The Court first notes that Petitioner's characterization of the direct-appeal brief is inaccurate: Petitioner's appellate counsel did raise two of the allegedly omitted claims to the OCCA.  *See* Pet'r's Appellate Br. at 15-22 (asserting the prosecutorial-misconduct false-testimony claim and the accomplice-instruction due process claim raised here within Grounds One and Three).  Petitioner thus cannot sustain his argument that his appellate attorney performed deficiently by omitting these issues in the direct appeal.  *Cf. United States v. Sauceda*, 473 F. App'x 861, 862 (10th Cir. 2012) (rejecting habeas ineffective-assistance claim where counsel had in fact raised an issue argued by the petitioner).

And, as discussed above, Petitioner's underlying assumption that his appellate attorney was obligated to "raise every nonfrivolous claim" in the merits brief is unfounded. *Smith*, 528 U.S. at 288; *see also Jones v. Barnes*, 463 U.S. 745, 754 & n.7 (1983).  Of the

---

[5] Where there has been no showing of deficient performance, there is no need to address the prejudice prong of the analysis.  *See Strickland*, 466 U.S. at 697.

omitted claims, Petitioner identifies three that he believes should have been raised on appeal: (a) that the trial court erred in denying Petitioner's requests for a continuance and appointment of new counsel; (b) that Petitioner received ineffective assistance of trial counsel, and (c) that the prosecutor improperly vouched for State witnesses and gave his personal opinion to the jury regarding Petitioner's guilt. *See* Pet. at 11-18, 21-23, 24-25.

Petitioner raised IAAC claims based upon the omission of claims (a) and (b) in the state postconviction proceedings, where the IAAC were rejected on the merits. *See* Trial Ct. Postconviction Order at 2-15; OCCA Postconviction Order at 2. Accordingly, the Court will examine these claims pursuant to § 2254(d)(1). *See Spears*, 343 F.3d at 1248; *Harrington*, 562 U.S. at 105.

### a. Failure to Allege Trial-Court Error Regarding Denial of Motions for Continuance and New Counsel

In September 2013, Petitioner's trial counsel filed a motion seeking a continuance of Petitioner's jury trial. During that same month, Petitioner submitted his own correspondence to the trial court in which he complained of communication difficulties with his trial counsel and requested a continuance of proceedings and new representation. *See* Pet. at 11-12; OR 145-47, 148-50, 152-53. Petitioner contends that his requests were denied, resulting in a deprivation of Petitioner's due process rights. *See* Pet. at 11-12.

 In analyzing an IAAC claim based upon the failure to raise an argument on appeal, the Court "look[s] to the merits of the omitted issue." *Cargle*, 317 F.3d 1196, 1202 (10th Cir. 2003) (internal quotation marks omitted).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its

omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Id.*

The record reflects that, contrary to Petitioner's assertion, the trial court on September 23, 2013, granted a lengthy continuance, resetting the trial date from September 23, 2013, to March 24, 2014. *See* OR 151; Trial Ct. Postconviction Order at 11. The trial court additionally held status conferences in October 2013, November 2013, January 2014, and February 2014, at which Petitioner and his counsel were present. *See* OR 151, 155; Trial Ct. Postconviction Order at 6-10. The record does not reflect any further requests for a continuance were submitted, either through counsel or pro se, and Petitioner does not explain why the continuance granted was insufficient to allow him to prepare for trial.

Regarding Petitioner's request for new defense counsel, the trial court determined that "[a]ny issues associated with the relationship between the petitioner and his trial counsel . . . were resolved on and after September 23, 2013, when the Court continued the jury trial and held the status conferences." Trial Ct. Postconviction Order at 11. Petitioner's vague allegations that his trial counsel failed to "perform[] his duties and responsibilities" and "wholly ignored Petitioner's concerns" do not evince any error in this finding or show any deprivation of due process. Pet. at 11; *cf. United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."); *Romero v. Furlong*, 215 F.3d

1107, 1113 (10th Cir. 2000) (discussing factors to be considered when determining whether there has been a "complete breakdown" in attorney-client communication).

For the reasons stated, these claims of trial-court error lack merit, and their omission from the direct appeal does not constitute ineffective assistance.  *See Cargle*, 317 F.3d at 1202.

### b.  Failure to Allege Ineffective Assistance of Trial Counsel

Petitioner next argues that appellate counsel provided ineffective assistance by failing to raise an IATC claim on direct appeal.  *See* Pet. at 13-15.  Accordingly, the Court examines the arguments Petitioner has raised regarding his trial counsel's ineffective assistance under the Sixth Amendment.  *See id.*; *Duckett v. Mullin*, 306 F.3d 982, 996 (10th Cir. 2002) ("In order to succeed on his claim that appellate counsel was ineffective, [the petitioner] must first demonstrate that he would have been entitled under *Strickland v. Washington* to relief for the ineffectiveness of trial counsel." (citation omitted)).  "The relevant question is whether appellate counsel was objectively unreasonable in failing to raise [the IATC claims] on direct appeal and, if so, whether there is a reasonable probability that, but for his counsel's unreasonable failure to raise these claims, petitioner would have prevailed on his appeal."  *Duckett*, 306 F.3d at 996 (alteration and internal quotation marks omitted).

Petitioner first points to the trial testimony of a firearms examiner, who stated that a live (unfired) round of ammunition was found at the crime scene.  The examiner further testified that this bullet had been previously loaded and ejected from the chamber of a gun.  *See* Trial Tr. 448-50, 469.  Liberally construed, Petitioner contends that defense counsel

27

should have questioned Petitioner and Mr. Williams about the unfired bullet at trial. According to Petitioner, the unfired bullet supported his theory that Mr. Williams, rather than Petitioner, used Petitioner's gun to shoot the victim because Petitioner "kept a bullet in the chamber of his gun" and would have simply "pulled the hammer back on his gun and fired." Pet. at 13 (emphasis omitted). Mr. Williams, however, not knowing that Petitioner kept a bullet in the chamber, would have racked the slide to load the weapon, according to Petitioner, thus ejecting the bullet. *See id.* at 13-14.

Petitioner's argument does not support a finding that trial counsel's performance fell below *Strickland*'s standard of objective reasonableness. As noted by the trial court, "[i]t's not logical or believable that Mr. Williams" (who was armed with his own pistol at the crime scene) "would grab [Petitioner's] Jimenez pistol from under the driver's seat." Trial Ct. Postconviction Order at 14. Further, the firearms examiner testified that he did not know from what firearm the bullet had been ejected. Trial Tr. 450. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689. And "there is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003)). Petitioner has not shown that it was objectively unreasonable for trial counsel to refrain from questioning Petitioner and Mr. Williams about the unfired bullet.

Petitioner also contends that he received ineffective assistance of trial counsel due to his attorney's procrastination and lack of communication with Petitioner during the pretrial stages of his legal proceedings. *See* Pet. at 16-18 (objecting that his attorneys had

delayed proceedings and failed to sufficiently investigate or keep Petitioner informed of certain issues). When considering the issue on postconviction review, the trial court made the factual finding that "[a]ny issues associated with the relationship between the petitioner and his trial counsel . . . were resolved on and after September 23, 2013." Trial Ct. Postconviction Order at 11. The trial court further found that "trial counsel did in fact communicate with the petitioner and share and review material with the petitioner" and that trial counsel "actively advocated on the petitioner's behalf, cross-examined all witnesses for the State, aggressively cross examined Nelson Williams, were able to play for the jury the video of the police interview of Nelson Williams, and interposed objections [throughout] the trial." *Id.* at 11, 14-15. Petitioner's broad assertions of error fail to rebut the presumption of correctness afforded these findings and fail to show that his trial counsel's representation was deficient. *See* 28 U.S.C. § 2254(e)(1); *Strickland*, 466 U.S. at 687-89.

Having determined that trial counsel's conduct was not objectively unreasonable under *Strickland*, the Court concludes that the omission of the IATC claim from Petitioner's direct appeal does not constitute deficient performance of appellate counsel. *See Duckett*, 306 F.3d at 996. As with the claims of trial-court error addressed *supra* in Part II(D)(3)(a), Petitioner cannot show a lack of "any reasonable argument" that his appellate counsel "satisfied *Strickland*'s deferential standard" as to this omitted claim. *Harrington*, 562 U.S. at 105; *see* 28 U.S.C. § 2254(d)(1).

### 4. Failure to Allege Prosecutorial Error Regarding Statements to Jury

Petitioner's final IAAC claim (referred to above as "claim (c)") is that his appellate counsel should have raised as a claim of error that the State's prosecutor improperly asserted his personal opinion by arguing to the jury that Mr. Williams was telling the truth in his testimony while Petitioner was lying. *See* Pet. at 21-23.

> Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony. Likewise, an attack on a witness's veracity is improper only in similar circumstances. Thus, it is not improper for a prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility.

*Thornburg*, 422 F.3d at 1132 (citation and internal quotation marks omitted).

Petitioner did not raise this particular omission by appellate counsel as a basis for error in the state courts, and so the claim is unexhausted for federal habeas purposes and likely procedurally defaulted. *See* Answer at 43 n.9. "Where questions of procedural bar are problematic, however, and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits." *Black v. Ezell*, 497 F. App'x 780, 781 n.3 (10th Cir. 2012) (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(2).

The Court can readily dispose of this IAAC claim. The cited transcript pages by Petitioner do not reflect that the prosecutor "argued that Mr. Williams was being truthful and [Petitioner] was lying about what happened that night." Pet. at 21 (citing Trial Tr. 760-68, 807-10). Although the prosecutor advocated for Mr. Williams' version of events, the

prosecutor also stated to the jury members that they "have to determine what it is that's reasonable" with regard to Petitioner's and Mr. Williams' testimony.  Trial Tr. 764.  The transcript further does not reflect that the prosecution offered an explicit assurance of Mr. Williams' veracity or "suggest[ed] that he knew something more about [Petitioner's or Mr. Williams'] credibility than could be deduced from the evidence at trial."  *Hanson v. Sherrod*, 797 F.3d 810, 838 (10th Cir. 2015).

Thus, it is plain that Petitioner cannot establish prosecutorial misconduct on this issue that would be "of sufficient significance to result in the denial of [Petitioner's] right to a fair trial."  *Cole v. Trammell*, 755 F.3d 1142, 1174 (10th Cir. 2014) (internal quotation marks omitted).  Accordingly, appellate counsel's omission of this claim does not constitute ineffective assistance under *Strickland*.  *See Cargle*, 317 F.3d at 1202.

### E.  Ground Five: Sufficiency of the Evidence

Petitioner contends that the evidence admitted at trial was insufficient for a jury to have found beyond a reasonable doubt that he committed the offense of first-degree murder in violation of title 21, section 701.7 of the Oklahoma Statutes.  *See* Pet. at 27-28 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  Petitioner raised this argument on direct appeal, and the OCCA denied relief.  *See* OCCA Op. at 12-14 ("Taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Castro killed Davis with malice aforethought.").

The Supreme Court's decision in *Jackson* establishes "the minimum amount of evidence that the Due Process Clause requires to prove the offense" of conviction: under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012); *Jackson*, 443 U.S. at 319; *see also Herrera v. Collins*, 506 U.S. 390, 402 (1993) ("[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.").

The OCCA has adopted the *Jackson* standard for review of sufficiency-of-the-evidence challenges and applied that standard in determining Petitioner's appeal. *See* OCCA Op. at 12 (citing *Rutan v. State*, 202 P.3d 839 (Okla. Crim. App. 2009)); *Rutan*, 202 P.3d at 849. This Court's task therefore "is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable." *Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009).

The sufficiency of the evidence inquiry is based on the substantive elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 309, 324 n.16. The applicable elements of First-Degree Murder in Oklahoma are: (1) the death of a human that was; (2) unlawful; (3) caused by the defendant; and (4) caused with malice aforethought. *See* OR 308 (Jury Instruction No. 29); *see also* Okla. Unif. Crim. Jury Instruction No. 4-61 (2d ed. 1996 & Supps.); Okla. Stat. tit. 21, § 701.7(A).

Petitioner challenges the evidence as to both the third and fourth elements of the charged offense. First, Petitioner disputes that the State presented sufficient evidence to establish that Petitioner caused Mr. Davis' death, arguing that Mr. Williams' testimony was the sole evidence presented on this point. *See* Pet. at 28. Petitioner's criticisms of Mr.

Williams' credibility do not, however, show that it was objectively unreasonable for the OCCA to conclude that the State had presented sufficient evidence from which the jury could have found Petitioner guilty of causing Mr. Davis' death.  *See Matthews*, 577 F.3d at 1185 (explaining that the fact "that a rational juror *might not* accept" a witness's testimony does not show "that a rational juror *could not* accept it" and that the second inquiry "is the question on which a sufficiency challenge necessarily must focus").  The jury, not this Court, must "consider the credibility of witnesses."  *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998) (internal quotation marks omitted).

Further, the jury was properly instructed that if it did find Mr. Williams to be an accomplice to the crime charged, it was not permitted to convict Petitioner "upon the testimony of [Mr. Williams] unless [it found] that his testimony is corroborated."  OR 303 (Jury Instruction No. 24); *see also id.* 299-302, 304 (instructions to the jury regarding accomplice testimony and the corroboration requirement); Okla. Unif. Crim. Jury Instruction No. 9-29; Okla. Stat. tit. 22, § 742.  The OCCA accurately determined that, even if it is assumed that the jury found Mr. Williams to be an accomplice, the jury was presented with corroborating evidence consistent with Mr. Williams' version of events and with Petitioner causing Mr. Davis' death.  *See* OCCA Op. at 12-13.  This evidence includes Mr. Bennett's testimony that Mr. Davis had lent Petitioner money and that Mr. Davis told Mr. Bennett that he expected Petitioner to pay him back.  *See* Trial Tr. 32, 39.  Testimony regarding the physical evidence in the case also linked Petitioner to the shooting of Mr. Davis.  *See, e.g.*, Trial Tr. 308-10, 642 (testimony of pawn shop owner and Petitioner reflecting that Petitioner possessed a Jimenez handgun); *id.* at 462 (firearms examiner

testifying that the bullet recovered from Mr. Davis's body had been fired from the Jimenez handgun).

Second, Petitioner objects that, other than Mr. Williams' testimony, there was insufficient evidence to support the "malice aforethought" element, as the State presented no evidence that Petitioner "had thought about or planned to [k]ill Mr. Davis" or that there was "any animosity between Petitioner and Mr. Davis." Pet. at 28.

Considering the entire trial record, a rational trier of fact could find that Mr. Davis' death was caused with malice aforethought—a standard that does not require lengthy planning or "animosity."[6]  As noted by the OCCA, there was evidence presented that Petitioner owed Mr. Davis money, that Petitioner stated he had to get Mr. Davis "out of the game," that Petitioner encouraged Mr. Davis to follow him to a dark street, and that Petitioner shot Mr. Davis in the back of the head.  *See* Trial Tr. 39, 153, 158-61, 162-68, 170-71.  Although Petitioner testified to a different version of events, it is the jury's job to

-----

[6] The jury was specifically instructed:

> "Malice aforethought" means a deliberate intention to take away the life of a human being.  As used in these instructions, "malice aforethought" does not mean hatred, spite or ill-will.  The deliberate intent to take a human life must be formed before the act and must exist at the time a homicidal act is committed.  No particular length of time is required for formation of this deliberate intent.  The intent may have been formed instantly before commission of the act.

> The external circumstances surrounding the commission of a homicidal act may be considered in finding whether or not deliberate intent existed in the mind of the defendant to take a human life.  External circumstances include words, conduct, demeanor, motive, and all other circumstances connected with a homicidal act.

OR 310-11 (Jury Instruction Nos. 31, 32); *see also* Okla. Unif. Crim. Jury Instruction Nos. 4-62, 4-63.

"weigh conflicting evidence." *Lucero*, 133 F.3d at 1312 (internal quotation marks omitted). "[W]hen faced with a record of historical facts that supports conflicting inferences the court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution." *Matthews*, 577 F.3d at 1184 (alteration and internal quotation marks omitted).

Therefore, the OCCA's rejection of Petitioner's challenge to the sufficiency of the evidence was not an unreasonable application of the governing *Jackson* standard. *See* OCCA Op. at 12-13; 28 U.S.C. § 2254(d)(1); *Jackson*, 443 U.S. at 319; *see also Parker v. Matthews*, 567 U.S. 37, 43 (2012) (discussing the "twice-deferential standard" a federal habeas court must apply when a state court has rejected a *Jackson* claim on the merits). Petitioner is not entitled to habeas relief on Ground Five.

## CONCLUSION

For the reasons stated herein, the Petition for Writ of Habeas Corpus (Doc. No. 1) is DENIED. A separate judgment shall be entered.

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Further, "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Upon review, the Court concludes that the requisite standard is not met in this case. Thus, a certificate of appealability is DENIED.

IT IS SO ORDERED this 19th day of August, 2021.

CHARLES B. GOODWIN
United States District Judge